**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** a Texas resident,<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NATIONAL DEBT RELIEF LLC**, a New York Limited Liability Company, and **LAW OFFICES OF ROBERT S. GITMEID & ASSOCIATES PLLC,** a New York Professional Limited Liability Company, **ROBERT STANLEY GITMEID,** a New Jersey resident,<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 3:26-cv-00310-KC |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

**1.** Plaintiff JOSHUA CACHO ("Plaintiff") is a natural person residing in El Paso, Texas, and was located in Texas for all calls alleged herein.

**2.** Defendant NATIONAL DEBT RELIEF LLC ("NDR") is a New York Limited Liability Company and may be served at 180 Maiden Lane, 30th Floor, New York, New York 10038.

**3.** Defendant LAW OFFICES OF ROBERT S. GITMEID & ASSOCIATES PLLC ("RSG Law") is a New York Professional Limited Liability Company and may be served at 180 Maiden Lane, 27th Floor, New York, New York 10038.

**4.** Defendant ROBERT STANLEY GITMEID ("Gitmeid") is a natural person residing in New Jersey, founder of RSG Law and may be served at 14 Mockingbird Dr, Colts Neck, New Jersey 07722.

## JURISDICTION AND VENUE

**5.** This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants.

**6.** Plaintiff is a citizen of Texas.

**7.** Defendant National Debt Relief, LLC is a limited liability company. On information and belief, each of its members is a citizen of a state other than Texas, and no member is a citizen of Texas.

**8.** Defendant Law Offices of Robert S. Gitmeid & Associates, PLLC is a professional limited liability company. For purposes of diversity jurisdiction, it is a citizen of every state in which its members are citizens. On information and belief, each of its members is a citizen of a state other than Texas, and no member is a citizen of Texas.

**9.** Defendant Robert Stanley Gitmeid is a citizen of New Jersey.

**10.** This Court has specific personal jurisdiction over Defendants because Plaintiff's claims arise directly out of and relate to Defendants' purposeful contacts with the State of Texas.

**11.** Defendants purposefully directed telemarketing calls to Plaintiff while Plaintiff was located in Texas, knowingly solicited Plaintiff for debt relief and legal services in Texas, transmitted enrollment and legal engagement agreements into Texas during live solicitation calls, and engaged in conduct intended to create ongoing contractual and financial relationships with a Texas resident.

**12.** During the telemarketing calls at issue, Defendants marketed, recommended, verified, and sold debt relief services and associated legal services to Plaintiff, transmitted binding enrollment and Attorney-Client Agreements to Plaintiff in Texas, and caused Plaintiff to suffer

injury in Texas as a direct result of Defendants' unlawful conduct.

**13.** Defendants further purposefully availed themselves of the Texas market by operating Texas-specific marketing webpages and materials branded and promoted as "Texas Debt Relief," which expressly target Texas consumers, discuss Texas-specific debt relief options, laws, and protections, and invite Texas residents to submit their telephone numbers and personal information for consultation and enrollment in Defendants' programs.

**14.** Defendants' Texas-directed marketing materials represent that Defendants provide debt relief services tailored to Texas residents, highlight Texas-specific financial hardship conditions, and promote enrollment by Texas consumers, demonstrating Defendants' intentional and systematic efforts to solicit business in Texas.

**15.** Plaintiff's claims arise directly from Defendants' Texas-directed marketing and telemarketing activities, including Defendants' Texas-specific online advertising and follow-up telemarketing calls that culminated in the transmission of contracts and the unlawful solicitation of legal services.

**16.** The exercise of specific personal jurisdiction over Defendants is consistent with due process because Defendants purposefully availed themselves of the privilege of conducting business in Texas, Plaintiff's claims arise from Defendants' Texas-related conduct, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

## VENUE

**17.** Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Western District of Texas, El Paso Division.

**18.** Defendants intentionally initiated and directed telemarketing calls to Plaintiff while Plaintiff was physically located in El Paso County, Texas, marketed and sold debt relief services

and associated legal services during those calls, and transmitted enrollment and Attorney-Client Agreements into this District during live solicitation calls.

**19.** Plaintiff received unlawful telemarketing calls in this District, reviewed and received contractual documents in this District, and suffered injury in this District, including invasion of privacy, nuisance, and unlawful solicitation, as a direct and proximate result of Defendants' conduct.

**20.** Defendants purposefully targeted this District by soliciting Texas residents through Texas-specific online marketing materials branded and promoted as "Texas Debt Relief," by inviting Texas consumers to submit telephone numbers for consultation and enrollment, and by following up with telemarketing calls directed into Texas.

**21.** Defendants had actual knowledge that Plaintiff resided in El Paso County, Texas, including through Defendants' transmission and execution of an Attorney-Client Agreement identifying Plaintiff by name, listing a Texas address, and listing a 915-area-code telephone number.

**22.** Defendants cannot defeat venue by placing calls from outside Texas where the calls were knowingly directed to a Texas resident, received in Texas, and caused injury in Texas.

**23.** Because Defendants intentionally targeted Plaintiff in this District and a substantial part of the events and resulting injuries occurred here, venue is proper in the Western District of Texas, El Paso Division, and transfer or dismissal for improper venue is unwarranted.

**24.** Plaintiff brings claims under Chapter 304 of the Texas Business and Commerce Code. Venue for an action based on a violation of Subchapter B or C is in the county in which the telemarketing call was made or received. Tex. Bus. & Com. Code § 304.259(1).

## TEXAS BUSINESS AND COMMERCE CODE CHAPTER 302

**25.** "Telephone call" has the meaning assigned by Section 304.002. TBCC § 302.001(6-a).

**26.** "Telephone solicitation" means a call or transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. Tex. Bus. & Com. Code § 302.001(7).

**27.** An "item" is defined as a property or service." Tex. Bus. & Com. Code § 302.001(1).

**28.** A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation. Tex. Bus. & Com. Code § 302.002.

**29.** A "seller" is defined as "A person who makes a telephone solicitation on the person's own behalf." Tex. Bus. & Com. Code §302.001(5).

**30.** A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

**31.** A separate registration certificate is required for each business location from which a telephone solicitation is made. Tex. Bus. & Com. Code § 302.101(b).

**32.** A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Tex. Bus. & Com. Code §302.252(a).

**33.** When a telephone solicitation is made and before consummation of any sales transaction, a seller shall provide to each purchaser the complete street address of the location from which the salesperson is calling the purchaser and if different, the complete street address of the seller's principal location. TBCC § 302.202(1).

**34.** The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. TBCC § 302.003(b)

**35.** Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

**36.** The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, deposition expenses, witness fees, and attorney's fees.

**37.** Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

**38.** The use or employment by any person of a false, misleading, or deceptive act or practice may cause economic damages or damages for mental anguish. Tex. Bus. & Com. Code § 17.50.

**TEXAS BUSINESS AND COMMERCE CODE CHAPTER 304**

**39.** A telemarketer may not make a telemarketing call to a telephone number published on

the Texas no-call list more than 60 days after the date the telephone number is published on the current list. Tex. Bus. & Com. Code § 304.052.

**40.** In making a telemarketing telephone call, a telemarketer may not block the identity of the telephone number from which the call is made to evade a device designed to identify a telephone caller. Tex. Bus. & Com. Code § 304.151(a).

**41.** A telemarketer may not cause misleading information to be transmitted to a recipient's caller identification service or device or to otherwise misrepresent the origin of a telemarketing call. Tex. Bus. & Com. Code § 304.151(b)(3).

**42.** A consumer on the Texas no-call list is presumed to be adversely affected by a telemarketer who calls the consumer more than once. The consumer may bring a civil action based on the second or subsequent violation of Subchapter B if the consumer has notified the telemarketer of the alleged violation. Tex. Bus. & Com. Code § 304.257(a)(1).

**43.** If the consumer brings an action based on a violation of Section 304.052 and the court finds that the defendant willfully or knowingly violated that section, the court may award damages in an amount not to exceed $500 for each violation.

**44.** The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 304.005(b).

**45.** Venue for an action based on a violation of Subchapter B or C is in the county in which the telemarketing call was made or received. Tex. Bus. & Com. Code § 304.259(1)

## TEXAS GOVERNMENT CODE § 82.0651 PROHIBITED BARRATRY AND CIVIL LIABILITY

**46.** Texas law strictly regulates the solicitation of legal services and prohibits attorneys and those acting for their benefit from obtaining legal employment through improper solicitation

practices, commonly referred to as barratry.

**47.** Barratry includes the solicitation of professional employment by an attorney, or by a person acting on an attorney's behalf, through unsolicited telephone contact or through the use of paid intermediaries, runners, or marketing companies to obtain clients. Tex. Gov't Code § 82.0651; Tex. Penal Code § 38.12.

**48.** Texas Government Code § 82.0651 creates a civil cause of action against any person who commits barratry as defined by Texas Penal Code § 38.12(a) or (b) **or** Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct**.**

**49.** Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct prohibits a lawyer from seeking professional employment through unsolicited in-person or live telephone contact**,** and further prohibits a lawyer from paying, giving, or offering anything of value to a non-lawyer to solicit employment on the lawyer's behalf.

**50.** Texas Penal Code § 38.12 likewise prohibits a person from soliciting professional employment for a lawyer with the intent to obtain an economic benefit, including where such solicitation is conducted by a third party or intermediary acting for the lawyer's benefit.

**51.** Barratry may occur even where the attorney does not personally place the solicitation call, including where non-lawyer intermediaries are used to solicit prospective clients and funnel them into legal representation for the attorney's financial benefit.

**52.** Texas barratry law regulates the conduct of those engaging in or benefiting from improper solicitation, regardless of the state of residence of the solicited consumer, where the solicitation is directed, managed, or carried out through Texas-based entities or infrastructure**.**

**53.** A person who is solicited for legal services by conduct violating Texas Penal Code § 38.12 or Rule 7.03 may bring a civil action under Texas Government Code § 82.0651 against

any person who committed the barratry or benefited from it, whether or not the solicitation resulted in an executed legal-services contract.

**54.** Under Texas Government Code § 82.0651(c), a person who prevails on a barratry claim is entitled to recover, from each defendant who committed or benefited from the barratry, a civil penalty of $50,000, in addition to actual damages, reasonable and necessary attorney's fees, and injunctive relief, as authorized by law.

## FACTUAL ALLEGATIONS

**55.** Plaintiff registered his cellular telephone number on the Texas statewide no-call list more than 60 days prior to any calls alleged herein.

**56.** Defendant RSG Law is a law firm that contracted with NDR to market their legal services.

**57.** Defendant NDR is a debt settlement company.

**58.** Gitmeid is the founding member of RSG Law.

**59.** Gitmeid is not licensed to practice law in the state of Texas.

**60.** NDR marketed the debt settlement services on their own behalf.

**61.** NDR marketed the legal services on RSG Law's behalf.

**62.** RSG Law hired NDR to market their legal services, with the knowledge that any leads or clients referred to them by NDR would come from telemarketing practices conducted by NDR and/or its hired agent.

**63.** NDR knew that RSG LAW was not registered to telemarket in Texas.

**64.** The American Bar Association and the State Bar of Texas prohibit attorneys from directly making unsolicited phone calls to prospective clients. RSG LAW used NDR as an indirect means of marketing, circumventing these rules.

**65.** NDR made at least two (2) unsolicited calls to Plaintiff's cell phone, without his prior express written or oral consent (hereinafter "The Calls").

**Call Details**

**66.** On October 21, 2025, at 2:25 PM Plaintiff received an unauthorized telemarketing call from NDR with 877-870-7625 appearing on his Caller ID, soliciting debt relief services.

**67.** On October 22, 2025, at 5:19 PM, Plaintiff called 877-870-7625 (the number showing on the previous call from NDR) to verify the party responsible for the call he received.

**68.** Plaintiff was connected to "Juan from National Debt Relief" who informed Plaintiff they were reaching out to see if Plaintiff was interested in debt relief services offered by NDR.

**69.** Plaintiff engaged "Juan" to verify the identity for the call he had received. During the call Plaintiff was informed he would have to pay $565 for 52 months to complete enrollment to eliminate his debt.

**70.** Plaintiff was also informed that NDR's fee is "combined into the payment."

**71.** During the call Plaintiff was solicited separately for RSG Law.

**72.** Plaintiff was informed he would pay "$18 a month" for his Legal protection plan that would be "separate agreement with the firm."

**73.** Plaintiff was informed by "Juan" that the "$18 a month" was an optional additional charge that he would have to "Upgrade" to.

**74.** Plaintiff asked specifically what law firm it was and "Juan" told him it was "Robert S. Gitmeid & Associates."

**75.** During the call Plaintiff received an email containing a contract from NDR that had a section that showed the "Negotiation Fee" (which is the cost of the program that NDR would receive" would total $9,005.25.

**76.** Plaintiff was informed he would have to sign the agreement with NDR, to receive a separate agreement from RSG Law.

**77.** Plaintiff signed the agreement and received an email from echosign@echosign.com, with the "Reply-TO:" section to legalsecurity@gitmeidlaw.com, containing a separate "Client Retainer Agreement" from RSG Law, which confirmed the $18 a month required by Plaintiff Juan informed him he was to pay RSG Law for their services.

**78.** After confirming all responsible parties involved for the original solicitation call Plaintiff had received, he told "Juan" he was not interested in any of these services, to please cancel everything immediately and to not call back.

**79.** Call #2, On October 22, 2025, at 6:12 PM, Plaintiff received a call from 877-870-7625. Plaintiff answered and was greeted by Juan. Plaintiff told him not to call back again.

*Table A* displays calls received from Defendants' agent NDR.

Table A

| No: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| **1** | 10/21/2025 | 2:25 PM | 877-870-7625 | Unauthorized solicitation |
| | 10/22/2025 | 5:19 PM | 877-870-7625 | Outbound Call to NDR |
| **2** | 10/22/2025 | 5:59 PM | 877-870-7625 | Unauthorized solicitation |
| **3** | 10/22/2025 | 6:12 PM | 877-870-7625 | Unauthorized solicitation |

**80.** Each telemarketing call received by Plaintiff constituted a violation of Texas Business & Commerce Code Chapters 302 and 304 and Texas Government Code § 82.0651 because Defendants initiated telephone solicitations to Plaintiff in Texas for debt relief services and for legal services Plaintiff did not request, and did so for Defendants' commercial and economic

benefit.

**81.** Each telemarketing call received by Plaintiff constituted a violation of Texas Business & Commerce Code Chapters 302 and 304, and Texas Government Code § 82.0651, because Defendants placed or caused to be placed, unsolicited telephone solicitations to Plaintiff in Texas to market debt relief services and to solicit legal services Plaintiff did not request, all for Defendants' commercial and economic benefit.

**82.** At all relevant times, Plaintiff's cellular telephone number was registered on the Texas statewide no-call list more than sixty (60) days prior to any calls alleged herein, and Defendants were therefore prohibited from initiating telemarketing calls to Plaintiff under Texas Business & Commerce Code § 304.052.

**83.** Plaintiff did not provide his telephone number to Defendants for the purpose of receiving telemarketing calls, solicitations, consultations, or enrollment offers prior to Defendants' initial unsolicited call on October 21, 2025.

**84.** During the October 22, 2025, call with Defendant NDR's agent "Juan," after Plaintiff confirmed the identity of the party responsible for the original solicitation call, Plaintiff expressly advised Juan that he was not interested in Defendants' debt relief services or legal services, instructed Juan to cancel everything immediately, and directed Defendants not to call back.

**85.** Notwithstanding Plaintiff's explicit instruction during the October 22, 2025, call that Defendants cancel all services and not contact him again, Defendants initiated an additional solicitation call to Plaintiff later that same day, demonstrating Defendants' failure to honor do-not-call requests and to maintain and implement effective internal do-not-call compliance procedures as required by Texas law.

**86.** Defendants further violated Texas Business & Commerce Code § 304.151(b)(3) by

causing misleading caller-identification information to be transmitted to Plaintiff and by misrepresenting the origin of the telemarketing calls, including by displaying a 915-area-code caller ID number that Plaintiff later discovered belonged to an unrelated mortgage-purchasing business with no affiliation to Defendants.

**87.** Defendants' telemarketing conduct was intentional because Defendants had actual notice that Plaintiff was a Texas resident, including through the transmission and execution of an Attorney-Client Agreement identifying Plaintiff by name, listing a Texas address, and listing a 915-area-code telephone number, yet Defendants continued to direct solicitation calls into Texas.

**88.** Defendant National Debt Relief, LLC acted as the telemarketing agent and salesperson for Defendant Law Offices of Robert S. Gitmeid & Associates, PLLC and Defendant Robert Stanley Gitmeid by marketing, recommending, and selling RSG Law's legal services during live solicitation calls and by transmitting RSG Law's Attorney-Client Agreement to Plaintiff during the calls as part of the enrollment process.

**89.** Defendant RSG Law authorized and enabled NDR's solicitation conduct by supplying and pre-executing the Attorney-Client Agreement and related legal engagement documents, setting the $18 monthly legal fee marketed during the calls, and permitting NDR's non-lawyer agents to use those documents and scripted verification language to obtain legal employment by telephone.

**90.** Defendants RSG and Gitmeid violated Texas Business & Commerce Code § 302.101 by effecting telephone solicitations to Plaintiff in Texas without the required telephone solicitation registration for the entities on whose behalf the solicitations were made,

**91.** Defendant NDR, by knowingly acting as a salesperson on behalf of an unregistered seller violated Texas Business & Commerce Code § 302.252(a).

**92.** Defendant NDR held itself out as engaging in Texas-directed solicitation activity and, on information and belief, maintained a Texas telephone solicitation registration, yet knew or should have known that Defendant RSG Law did not hold the Texas telephone solicitation registration required to solicit Texas consumers for legal services by telephone.

**93.** On or about November 7, 2025, Plaintiff searched the Texas Secretary of State's telephone solicitor registration records and did not find any telephone solicitation registration for Defendant RSG Law, confirming that RSG Law was not registered as required under Texas Business & Commerce Code § 302.101.

**94.** Defendants' violations were not accidental and were not the result of any emergency or exigent circumstance. The calls were commercial solicitations intended to induce Plaintiff to purchase Defendants' debt relief services and to enter into a legal-services relationship and recurring fee arrangement benefiting RSG Law and Gitmeid.

**95.** No statutory exception, emergency, or lawful justification applied to permit Defendants' telemarketing calls to Plaintiff.

## RSG LAW'S AGENCY, CONTROL, AND RATIFICATION OF NDR'S TELEMARKETING

**96.** At all relevant times, Defendant Law Offices of Robert S. Gitmeid & Associates, PLLC ("RSG Law") engaged Defendant National Debt Relief, LLC ("NDR") as its telemarketing and client-acquisition agent to solicit consumers by telephone for RSG Law's legal services, including its so-called "Legal Security," "Legal Protection," or "Litigation Protection" plan.

**97.** The telemarketing calls at issue were not limited to marketing debt settlement services. During live solicitation calls placed by NDR, NDR's non-lawyer sales agents affirmatively marketed, recommended, verified, and sold RSG Law's legal services on RSG Law's behalf.

**98.** During a telemarketing call with NDR, Plaintiff was quoted a monthly payment of $565 for 52 months for debt settlement services and was informed that NDR's fees were combined into that payment.

**99.** During the same call, before any verification or confirmation segment, NDR's sales agent introduced legal services by advising Plaintiff that if he had already been sued, NDR could not assist him because the likelihood of success would be low, but that NDR had also included a legal protection plan in Plaintiff's monthly quotes "just in case" Plaintiff needed legal help.

**100.** NDR's agent represented that as soon as Plaintiff made his first payment, the legal services would be activated, and that if a creditor pursued litigation after Plaintiff's first payment, Plaintiff would be covered by the legal protection plan.

**101.** After introducing the legal protection plan in this manner, NDR's agent transitioned into a required verification segment, stating that he needed to confirm certain information before proceeding and advising Plaintiff that the legal security plan had already been included in Plaintiff's quoted payment.

**102.** During this verification segment, NDR's agent represented that the $18 per month legal fee was already fractured into the same monthly quotes Plaintiff would be paying, while simultaneously stating that it was a separate agreement with the law firm, thereby presenting the legal services as both bundled into the payment and independently required.

**103.** NDR's agent read what appeared to be scripted verification language concerning RSG Law's services, stating in substance: "So we recommend that you upgrade to legal security to assist you. If any litigation occurs from creditors enrolled in the program, $18 per month from your dedicated savings account will go towards this third-party service, and if the creditor pursues litigation, an attorney will be available to assist," and further explaining that the legal

security plan was offered "for peace of mind."

**104.** During this same scripted portion of the call, NDR's agent stated that the legal security plan was "already included on your quotes" and asked Plaintiff whether he would like to "update" to the legal security plan.

**105.** When Plaintiff asked which attorney or law firm would be providing the legal services, NDR's agent identified the firm as Robert Gitmeid & Associates, also referred to as Robert S. Gitmeid & Associate, confirming that the legal services being marketed and sold during the call were those of RSG Law.

**106.** NDR's agent further informed Plaintiff that enrollment in RSG Law's legal services required execution of a separate Attorney-Client Agreement, which would be provided after Plaintiff signed NDR's agreement, confirming that enrollment in RSG Law's services was integrated into and dependent upon NDR's telemarketing-driven enrollment process.

**107.** Immediately following the telemarketing call, Plaintiff received electronic enrollment documents for NDR's debt settlement program and, shortly thereafter, received a Client Retainer Agreement from RSG Law, confirming the $18 monthly legal fee that had been represented, verified, and recommended during the call.

**108.** RSG Law exercised actual authority and control over NDR's solicitation activities, including but not limited to:

(a) drafting, approving, and supplying the RSG Law Client Retainer Agreement, Limited Power of Attorney, and related legal engagement documents transmitted to consumers solicited by NDR;

(b) setting the price, structure, and duration of RSG Law's legal fees, including a fixed $18.00 monthly legal fee marketed during telemarketing calls as legal protection and litigation coverage;

(c) requiring NDR's agents to read scripted verification and disclosure language describing RSG Law's legal services, fee structure, and the availability of litigation defense;

(d) authorizing NDR's non-lawyer agents to recommend RSG Law's legal services based on consumers' debt status, default risk, and perceived litigation exposure; and

(e) requiring that RSG Law's legal services be sold as part of a bundled enrollment process initiated and controlled through NDR's telemarketing calls.

**109.** RSG Law's Attorney-Client Agreement identified Plaintiff by name, was dated October 22, 2025, and was executed on behalf of RSG Law by Robert S. Gitmeid, demonstrating RSG Law's advance authorization of, and direct participation in, the telemarketing-based solicitation.

**110.** RSG Law financially benefited from and ratified NDR's unlawful telemarketing by accepting automatic monthly legal fees generated exclusively through NDR's telemarketing activities.

**111.** RSG Law's legal fees were integrated into the same payment infrastructure used for NDR's debt settlement program, with automatic deductions made through Plaintiff's dedicated account, thereby tying RSG Law's revenue directly to the unlawful calls.

**112.** NDR did not act independently or incidentally with respect to RSG Law's legal services. NDR acted as RSG Law's salesperson and marketing intermediary by introducing legal protection, explaining the scope of legal services, reading verification language, transmitting the Attorney-Client Agreement, and closing the sale of RSG Law's legal services during live solicitation calls.

**113.** RSG Law permitted non-lawyers employed by NDR to market and sell its legal services, including advising consumers regarding litigation risk and the availability of legal defense, conduct that RSG Law knew or should have known constituted unlawful solicitation, barratry,

and the unauthorized practice of law in Texas.

**114.** RSG Law knew or should have known that NDR was engaging in telemarketing practices to generate clients for RSG Law in Texas, despite RSG Law not being registered to telemarket in Texas and despite ethical prohibitions against attorney solicitation through indirect means.

**115.** Any contractual disclaimers or independent-contractor language relied upon by RSG Law are legally insufficient where, as here, RSG Law authorized the solicitation, required scripted disclosures, controlled material aspects of the sales process, supplied the legal engagement documents, set the fees, accepted the proceeds, and knowingly benefitted from the unlawful conduct.

**116.** By knowingly accepting the benefits of NDR's unlawful telemarketing, failing to repudiate the conduct, and continuing the relationship after notice of illegality, RSG Law ratified NDR's actions under federal common-law principles of agency.

**117.** Accordingly, the telemarketing calls at issue were made by or on behalf of RSG Law, and NDR acted as RSG Law's agent, salesperson, and telemarketer for purposes of liability under the Telephone Consumer Protection Act and Texas Business & Commerce Code Chapters 301, 302, 304, and 305.

**118.** RSG Law is therefore jointly and severally liable for all unlawful telemarketing calls made by NDR to Plaintiff, including all resulting statutory damages, enhanced damages for willful violations, and injunctive relief.

**RSG AND GITMEID ARE BOTH INDIVIDUALLY LIABLE FOR BARRATRY**

**119.** During an unsolicited telemarketing call placed by National Debt Relief, LLC ("NDR"), Plaintiff was solicited for legal services offered by Law Offices of Robert S. Gitmeid & Associates, PLLC ("RSG Law").

**120.** During that same telemarketing call, while Plaintiff remained on the line with NDR's sales agent Juan, Juan personally transmitted to Plaintiff by email a separate Attorney-Client Agreement for RSG Law as part of the live solicitation process.

**121.** Juan had the ability, authority, and access to generate and send RSG Law's Attorney-Client Agreement directly to Plaintiff during the call, with Plaintiff's personal identifying information already populated in the agreement, including Plaintiff's name identified as the "Client."

**122.** The Attorney-Client Agreement transmitted during the call was pre-populated with Plaintiff's identifying information, identified Plaintiff by name as the "Client," bore RSG Law's letterhead, and contained the executed signature of Defendant Robert S. Gitmeid multiple times under the firm name Law Offices of Robert S. Gitmeid & Associates, PLLC.

**123.** The agreement expressly stated that "this Client Retainer Agreement is made as of 10/22/2025 between the Law Offices of Robert S. Gitmeid & Associates, PLLC ('RGA'), a law firm, and Joshua A. Cacho," further confirming that the agreement was complete, executed, and intended to bind Plaintiff at the time it was transmitted during the live telemarketing call.

**124.** The presence of Gitmeid's executed signatures on the agreement transmitted during the telemarketing call demonstrates that Gitmeid had pre-authorized the use of his signed legal engagement agreements as sales instruments and delegated authority to NDR and its agents to distribute those agreements for the purpose of obtaining legal employment.

**125.** Robert S. Gitmeid personally participated in the unlawful solicitation of his firm's legal services by authoring, reviewing, approving, signing, and permitting the use of the Attorney-Client Agreement that NDR and its agents used during live telemarketing calls to Texas residents, including Plaintiff.

**126.** Gitmeid knew and intended that RSG Law's Attorney-Client Agreement would be marketed, transmitted, and sold through live telephone solicitations placed by NDR, a non-lawyer marketing company, to prospective clients who had not sought legal representation from RSG Law.

**127.** Gitmeid and RSG Law authorized and paid, directly or indirectly, NDR to act as a runner, intermediary, or agent to obtain legal employment for RSG Law by telephone, and provided valuable consideration for those solicitations in the form of recurring monthly legal fees or other financial benefits generated when consumers enrolled in RSG Law's legal services.

**128.** Gitmeid personally benefitted financially from each client obtained through NDR's telemarketing activities, as RSG Law's legal fees were automatically charged on a recurring monthly basis as a direct result of the unlawful solicitation calls.

**129.** The solicitation of Plaintiff for RSG Law's legal services was not incidental and was not initiated by Plaintiff. Plaintiff did not seek legal representation from RSG Law, did not request contact from Gitmeid or his firm, and was solicited solely because Gitmeid caused and authorized NDR to initiate live telephone contact for the purpose of obtaining legal employment.

**130.** Gitmeid's conduct constitutes barratry under Texas Penal Code § 38.12(a)(2) and (a)(4) because, with intent to obtain an economic benefit, he authorized, permitted, and ratified the payment of money or things of value to a non-lawyer to solicit legal employment for himself and his law firm.

**131.** Gitmeid's conduct also violates Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, which expressly prohibits lawyers from soliciting employment through live telephone contact and from paying or offering anything of value to a non-lawyer to solicit clients.

**132.** Gitmeid cannot shield himself from liability by acting through a professional limited

liability company or through third-party marketers. Under Texas law, individual attorneys are personally liable for barratry when they personally authorize, participate in, or ratify unlawful solicitation conduct, regardless of whether the solicitation is carried out by an agent, intermediary, or marketing company.

**133.** Gitmeid had actual or constructive notice that telemarketing-based solicitation of legal services in Texas was unlawful, yet continued to authorize, ratify, and profit from such conduct by executing Attorney-Client Agreements in advance and allowing them to be transmitted by NDR agents during live solicitation calls.

**134.** Plaintiff was injured by Gitmeid's barratry because he was unlawfully solicited for legal services he did not seek, subjected to intrusive telemarketing, and induced during a live solicitation call to receive and review a legal engagement agreement bearing Gitmeid's executed signature as a direct result of the unlawful solicitation.

**135.** Accordingly, Defendant Robert S. Gitmeid is individually liable, and Defendant RSG Law is vicariously and directly liable, under Texas Government Code § 82.0651 for civil damages arising from prohibited barratry, including statutory penalties, actual damages, disgorgement of fees, and attorney's fees.

**TEXAS BUSINESS AND COMMERCE CODE 302.101**

**136.** Plaintiff was located in Texas at all times during the calls at issue.

**137.** On January 22, 2026, Plaintiff searched for a telephone solicitation registration for Defendants NDR and RSG Law at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

**138.** Plaintiff searched: initial registration, bond canceled, pending, renewal registration, closed, and suspended registration. Plaintiff did not find any registration for Defendant RSG Law.

**139.** Defendants NDR and RSG Law have never been registered to telephone solicit from Texas, or into Texas.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

**140.** Defendants' telemarketing calls caused Plaintiff the precise injuries Texas telemarketing statutes were enacted to prevent, including nuisance, invasion of privacy, and unwarranted intrusion into the daily use of a personal telephone, by trespassing upon and interfering with Plaintiff's possessory and privacy interests in his cellular telephone, commandeering his device without consent for Defendants' commercial benefit, and intruding upon Plaintiff's seclusion by disrupting his personal time and private communications.

**141.** As a direct and proximate result of Defendants' unlawful calls, Plaintiff suffered actual and concrete harms, including but not limited to:

(a) invasion of privacy and intrusion upon seclusion;

(b) anger, annoyance, frustration, and emotional distress caused by repeated unsolicited solicitations;

(c) depletion of device resources, including storage capacity, battery life, and data usage;

(d) increased frequency of charging and disruption of normal personal use of Plaintiff's cellular telephone;

(e) loss of time and productivity spent answering, screening, addressing, and attempting to stop the unlawful calls;

(f) disruption to daily activities and peace of mind, including interference with personal communications;

(g) economic injury, including costs associated with maintaining cellular service, data usage, and

device wear caused by the unlawful calls; and

(h) statutory injury recognized by Texas telemarketing statutes, which provide damages for the precise invasions of privacy and nuisance harms suffered by Plaintiff.

## CAUSES OF ACTION:

### COUNT ONE:
**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(against all Defendants)**

**142.** Plaintiff incorporates the preceding paragraphs 1-138 as if fully set forth herein.

**143.** NDR made at least three (3) solicitation sales calls to Plaintiff on behalf of NDR and RSG Law without the aforementioned corporations having a valid telephone solicitation as required under Tex. Bus. & Com. Code § 302.101.

**144.** NDR made the sales calls while knowing Defendant RSG Law was not registered to telephone solicit in Texas.

**145.** As a result of Defendants' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code § 302.302(a).

**146.** As a result of Defendants' violations of Tex. Bus. and Com. Code § 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code § 302.302(d).

### COUNT TWO:
**Violation of Texas Business and Commerce Code § 304.151(b)(3)**
**(Against All Defendants)**

**147.** Plaintiff incorporates the preceding paragraphs 1-143 as if fully set forth herein.

**148.** On January 23, 2026, Plaintiff called 915-221-0456, the number identified on Plaintiff's Caller ID as a result of Defendants' calls. Plaintiff was greeted by a representative from a

company that purchases mortgages and stated they had no affiliation with any of the Defendants.

**149.** Defendants' agent NDR masked their telephone number that was transmitted to Plaintiff's Caller Identification service.

**150.** Plaintiff is entitled to recover statutory damages and other relief as permitted by Tex. Bus. & Com. Code Chapter 304, including damages available for violations of Subchapter D.

**COUNT THREE:**
**(Violation of Texas Business & Commerce Code § 304.052 -Telemarketing Call to Telephone Number on List Prohibited)**

**151.** Plaintiff incorporates the preceding paragraphs 1-148 as if fully set forth herein.

**152.** Plaintiff registered his cellular telephone number on the Texas statewide *Do-Not-Call* list in accordance with Texas Business & Commerce Code Chapter 304 prior to receiving any telemarketing calls from Defendants.

**153.** Texas Business & Commerce Code § 304.052 provides that:

**154.** "A telemarketer may not make a telemarketing call to a telephone number published on the Texas no-call list more than 60 days after the date the telephone number appears on the current list."

**155.** Defendants, acting individually or through their agents or salespersons, knowingly and willfully made multiple telemarketing calls to Plaintiff's telephone number after it appeared on the Texas no-call list.

**156.** Defendants' repeated telemarketing calls to Plaintiff's telephone number were made more than 60 days after Plaintiff's number was published on the Texas no-call list and therefore violated § 304.052.

**157.** As a direct and proximate result of Defendants' violations of § 304.052, Plaintiff has been injured and is entitled to recover statutory damages for each violation as authorized by

Texas Business & Commerce Code § 304.257(b).

**158.** Plaintiff further seeks all relief authorized by law for violations of § 304.052, including statutory damages of up to $500 per violating call for knowing or willful violations, as authorized by Texas Business & Commerce Code § 304.257.

## COUNT FOUR:
## Violation of Texas Government Code § 82.0651 Civil Liability for Prohibited Barratry (Against All Defendants)

**159.** Plaintiff incorporates the preceding paragraphs 1-156 as if fully set forth herein.

**160.** Barratry is the illegal solicitation of legal services from people who have not sought them out.

**161.** Barratry can occur through direct unsolicited contact by a lawyer or through a hired “runner” or “marketing company” who are paid by lawyers to find and refer clients.

**162.** Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, entitled "Prohibited Solicitations and Payments,” specifically prohibits a lawyer from contacting a potential client in a manner that involves unsolicited in-person or live telephone communication for the purpose of seeking professional employment, among other specific prohibitions related to solicitation and payments for referrals.

**163.** Rule 7.03 Key prohibitions include:

1. Contacting a potential client: A lawyer cannot engage in in-person, live telephone, or real-time electronic contact with a prospective client when a significant motive for the contact is to obtain employment.
2. Soliciting employment via other: A lawyer cannot offer or give money, property, or benefits to a non-lawyer to solicit employment from a prospective client.
3. Paying or accepting payment for referrals: A lawyer cannot pay or accept payment for referring a

client to another lawyer.

**164.** Plaintiff was solicited for RSG Law, and Gitmeid's legal services by Defendants' agent NDR. Plaintiff did not initiate communication with any Defendants.

**165.** Plaintiff was targeted by Defendants despite not having a preexisting contractual relationship with Defendants.

**166.** Defendants' conduct violated at least Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

**167.** Plaintiff was solicited on behalf of Defendants RSG Law, and Gitmeid so that said Defendants would benefit financially.

**168.** Defendants knew or should have known that its authorization to tele-solicit clients was in violation of Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct and Section 38.12(b) of the Texas Penal Code.

**169.** A person commits an offense if, with intent to obtain an economic benefit the person pays, or gives of offers to "pay, give, or advance" a person money or anything of value to solicit employment. Penal Code Section 38.12(a)(4).

**170.** Defendants RSG Law, and Gitmeid violated Texas Penal Code § 38.12 when they solicited employment for themselves by telephone to obtain economic benefit. Penal Code 38.12(a)(2) Barratry and Solicitation of Professional Employment.

**171.** A person who was solicited by conduct violating Section 38.12 (Barratry and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

**172.** A person who prevails under Subsection (c) shall recover from each person who engaged in barratry: (1) A penalty in the amount of $50,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants NDR, RSG Law, and Gitmeid jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants and/or their agent(s), employee(s), and/or representative(s)' calls violate the Texas Business and Commerce and Texas Government Code § 82.0651;

C. An award of $500 in statutory damages per violation of the Texas Business and Commerce code 304.052 intentional violations jointly and severally against Defendants for 3 calls;

D. An award of $1,500 in statutory damages per violation of the Texas Business and Commerce code § 304.151(b)(3) intentional violations jointly and severally against Defendants for 3 calls;

E. An award of $5,000 in statutory damages per violation of the Texas Business and Commerce code § 302.101 intentional violations jointly and severally against Defendants for 3 calls;

F. An award of civil penalties of $50,000 per Defendant pursuant to Texas Government Code § 82.0651, as amended, together with voidance of the attorney-client agreement, actual damages, and injunctive relief;

G. Such further relief as the Court deems necessary, just, and proper.

February 5, 2026,

Respectfully submitted,

Joshua Cacho
Plaintiff, Pro Se
P.O. Box. 26971
El Paso, Texas 79912
407-780-9810
Jcacho1848@gmail.com